UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

LAUREN ULRICH, an individual, on behalf of herself and all others similarly situated,

Plaintiff,

v.

ALASKA AIRLINES, INC.,

Defendant.

CASE NO. C07-1215RSM

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

Plaintiff Lauren Ulrich filed this class action pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. ("FLSA"), to challenge defendant Alaska Airlines' policy of requiring flight attendant trainees to attend training classes without pay for the time spent in class. The case was originally filed in United States District Court for the Central District of California, and then transferred to this district upon defendant's motion. The parties have agreed to resolve the legal question of FLSA applicability through summary judgment motions before proceeding to class certification. Oral argument was held on January 8, 2009, and the Court took the matter under advisement. For the reasons set forth below, the Court shall grant defendant Alaska Airline's summary judgment motion, and deny plaintiff Ulrich's cross-motion.

## BACKGROUND

The relevant facts are not in dispute. Plaintiff Lauren Ulrich attended two separate 5-week

ORDER ON CROSS-MOTIONS FOR
SUMMARY JUDGMENT - 1

training classes conducted by Alaska Airlines ("Alaska") for prospective flight attendant candidates. Such training is required of flight attendants by the Federal Aviation Administration ("FAA"). The training covers safety and emergency procedures, as well as customer service practice and Alaska Airlines' internal procedures. The forty-hour weeks consist of classroom sessions and simulations of emergency situations, plus three or four "in-flight" training sessions of approximately one and a half hours each.

Each individual airline generally conducts its own training course, and Alaska, like most airlines, does not accept training conducted by other airlines. The flight attendant trainees are not paid during their training, but they are provided with free housing near the training center in Seattle, Washington, and are given a stipend for meal expenses. Although the trainees are not guaranteed a job as a flight attendant upon the successful completion of the training program, nearly all are offered the job. Plaintiff was hired by Alaska after each of her two training courses.

Plaintiff contends that Alaska's policy of not paying the trainees violates the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, and various provisions of the California Labor Code. Defendant moved in the California district court to dismiss the claims under California law at the same time that it moved to transfer the case to this venue. The California district judge granted the motion to transfer but declined to rule on the motion to dismiss the claims under California law, leaving that for this Court to decide. Alaska's motion for summary judgment includes dismissal of the California state law claims as well as the FLSA claim.

## DISCUSSION

I. <u>Legal Standard</u>

Summary judgment is appropriate "if the pleadings, deposition, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue is "genuine" if "a reasonable jury could return a verdict for the nonmoving party" and a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The evidence is viewed in the light most favorable to the non-moving

party. *Id.* "[S]ummary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable jury could return a verdict in its favor." *Triton Energy Corp. v. Square D Co.*, 68 F. 3d 1216, 1221 (9th Cir. 1995). It should also be granted where there is a "complete failure of proof concerning an essential element of the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient" to prevent summary judgment. *Triton Energy Corp.*, 68 F. 3d at 1221.

II. Analysis—FLSA Claim

The FLSA defines an "employee" simply as "any individual employed by an employer," and defines "employ" as including "to suffer or permit to work." 29 U.S.C. §§ 203(e)(1); 203(g). The Supreme Court has considered the question whether a person being trained by the employer to fill a position is an "employee" under the FLSA in the context of railroad employment. *Walling v. Portland Terminal Co.*, 330 U.S. 148 (1947). Defendant Portland Terminal, a railroad company, required prospective brakemen to complete a training course before they could work for the company. The trainees did not attend classroom sessions but learned the work routine by observing the actual work. They were then permitted to do that work, using actual railroad equipment, under close scrutiny. Those who successfully completed the training course were included on a list from which the company drew brakemen when needed.

The Court held that these trainees were not employees under the FLSA. Those who "work for their own advantage on the premises of another" are not "suffered or permitted to work." *Id.* at 152. The Court noted that persons who attend a school to train for employment in a particular industry may become a labor pool but until they are hired, they are not employees. Since the FLSA "was not intended to penalize railroads for providing, free of charge, the same kind of instruction at a place and in a manner which would most greatly benefit the trainees," the Court found that persons who attend classes offered by the railroad (instead of classes offered by a school) were not employees either. *Id.* at 153. Finally, because the railroads did not receive an "immediate advantage from any work done by the trainees," the trainees were not employees. *Id.*

The *Walling v. Portland Terminal* analysis has been applied to flight attendant training classes in

ORDER ON CROSS-MOTIONS FOR
SUMMARY JUDGMENT - 3

two cases arising in the Fifth and Eighth circuits. *Donovan v. American Airlines, Inc.*, 686 F. 2d 267 (5th Cir. 1982) ("*American Airlines*"); *Donovan v. Trans World Airlines, Inc.*, 726 F. 2d 415 (Eighth Circuit 1984) ("*TWA*"). In, *American Airlines*, the appellate court affirmed a district court decision finding that American Airlines flight attendant trainees are not employees under the FLSA. The court found the "balancing analysis" applied by the district court was appropriate:

> The court resolved the ultimate legal question by analyzing the "relative benefits flowing to trainee and company during the training period." The facts that regular employees are not displaced by the trainees and that the training is expensive, without "immediate" benefit to American, "turn the benefit flow in the direction of the employee." The court recognized the benefits accruing to American; the operation of the school is "by definition in the financial interest of American," for companies generally have "little interest in creating a labor pool for their competitors." Nevertheless, the court regarded the product of training as merely a labor pool of potential employees, offering American an insufficient benefit to bring the Act into play.

*Id*. at 271 (internal citations omitted). The court also noted that district court's analysis and conclusion were consistent with the Wage and Hour Administrator's interpretation of *Portland Terminal* and with a

ORDER ON CROSS-MOTIONS FOR
SUMMARY JUDGMENT - 4

six-part test developed by the Administrator for determining whether trainees are employees within the meaning of the FSLA. *Id*. at 237, citing Wage & Hour Manual (BNA) 91:416 (1975). .

The six-factor test was adopted by the Department of Labor in several Opinion Letters. The parties are in agreement that this six-factor test applies to determine whether trainees are employees under the FSLA. The six factors which must be met in order for the trainees not to be employees are as follows:

1) the training, even though it includes actual operation of the facilities of the employer, is similar to that which would be given in a vocational school;

2) the training is for the benefit of the trainees;

3) the trainees do not displace regular employees, but work under close observation;

4) the employer that provides the training derives no immediate advantage from the activities of the trainees; and on occasions his operations may actually be impeded;

5) the trainees are not necessarily entitled to a job at the completion of the training period; and

6) the employer and the trainees understand that the trainees are not entitled to wages for the time spent training.

*See*, DOL Opinion Letter, 2001 WL 1558755 (January 20, 2001). These same six criteria were repeated in a 2004 DOL Opinion Letter. 2004 WL 3177877 (October 19, 2004). Where all six factors are met, the trainees are **not** "employees" who must be paid wages under the FLSA.

Plaintiff contends that there is an additional four-factor test for determining whether time spent in training programs is compensable time set forth in 29 C.F.R. § 785.27. The four factors address whether the attendance at the training is voluntary, whether it takes place outside regular working hours, whether productive work is performed, and whether the training is directly related to the employee's job. These factors clearly apply only to **employees**, not trainees. Despite plaintiff's carefully nuanced language shift throughout her arguments, plaintiff has nowhere demonstrated that she was an "employee" rather than a "trainee" when she went through the training program. The Court therefore finds that it is the six-factor test set forth above, and not this additional four-factor test, which controls the question here. The factors shall each be considered in turn.

ORDER ON CROSS-MOTIONS FOR
SUMMARY JUDGMENT - 5

### 1) The Training is Similar to Vocational Training

Plaintiff asserts in her motion that she disputes only factors 2 through 6, so this factor is conceded.

### 2) Training is for the Benefit of Trainees

Plaintiff contends that the training is for the benefit of Alaska rather than for the trainees, because the trainees actually perform work on the training flights. It is undisputed that the trainees must take two or three training flights, during which they may assist the flight attendants with on-board service, such as food and beverage service. However, during these flights they do not wear uniforms, and they are not allowed to make safety announcements or perform any safety-related function. They do not sit in the flight attendants' jump seats, but in regular passenger seats. They do not displace any regular flight attendants—the flight is still fully staffed by Alaska employees.

Nevertheless, plaintiff asserts that the trainees are required to perform work "for the benefit of Alaska," because on the training flights they ". . . deliver food and drinks, pick up trash, make service announcements, interact with customers, and assist with boarding and de-planing." Plaintiff's Motion, Dkt. # 66, p. 9. This argument misses the point. The trainees are **allowed** to perform these services, under close observation from the working flight attendants. Alaska still must fully staff the airplane and pay the full complement of flight attendants.

Plaintiff's argument that the work she performed on training flights amounts to unpaid servitude is unconvincing. Plaintiff contends that the work performed on training flights distinguishes the Alaska trainees from those in the Fifth and Eighth Circuit cases, because the TWA and American airlines trainees did not actually perform any in-flight service; they used simulators for this part of the training. This is, however, an immaterial distinction. The Supreme Court in *Portland Terminal* held that the brakeman trainees were not employees even though they performed some work using the railroad equipment. Similarly here, the benefit was to the trainees, in that they could do the in-flight service under the observation of actual flight attendants, and gain valuable experience in a real rather than simulated work environment.

The Court thus finds that in-flight training, like the classroom training and other exercises, was for plaintiff's benefit—to allow her to qualify for employment by Alaska. On the training flights, by serving

ORDER ON CROSS-MOTIONS FOR
SUMMARY JUDGMENT - 6

passengers under the close observation of the regular flight attendants, plaintiff gained first-hand experience in the type of customer service provided by Alaska. This is a valuable skill which the trainees may take to a subsequent job at Alaska, or to another airline or even employment in a different field. As plaintiff admitted at her deposition, the skills she learned were valuable and transferable to other settings. This was yet another benefit that accrued to plaintiff and to other trainees.

### 3) No Displacement of Regular Employees, and Work under Close Observation

Plaintiff argues that the "new hires" (which is what she call the trainees throughout her motion) work without close supervision or observation. She asserts that the training flights are not staffed with instructors, only with regular flight attendants, and that the flight attendants do not actually do any supervision. However, as set forth above, the standard articulated in this factor is that the trainees perform work under "observation," not "supervision." Plaintiff does not dispute that the trainees were observed by the regular flight attendants during any in-flight service they performed. Had she not performed adequately or had she violated any of the in-flight rules, that would have been reported. Defendant has cited to deposition testimony demonstrating that trainees who violated FAA safety regulations, fell asleep on flights, talked inappropriately, or were tardy were dismissed from the program. Deposition of Coder, Dkt. # 59, Exhibit C, pp. 105-06; Deposition of Abbrederis, Dkt. # 59, Exhibit D, pp. 129-30. Plaintiff also conceded in her deposition that the trainees were under close observation while they worked the service cart, and that they were encouraged to ask for help from the flight attendants if they were unsure of how to perform a particular task properly. Deposition of Ulrich, Dkt. # 59, Exhibit A, pp. 33, 175, 181.

Further, plaintiff's failure to recognize the "displacement" part of this factor is fatal to her argument on this factor. Plaintiff cannot dispute that the trainees do **not** displace regular flight attendants on the training flights. The plane is staffed with a full complement of flight attendants, who under FAA regulations must do the safety announcements and perform all safety functions on the flight. If the trainees are allowed to work on the beverage cart service, the flight attendants stand by to assist if necessary *Id.*, p. 175. If a trainee is allowed to perform the pre-boarding equipment check, a flight attendant walks right behind the trainee to ensure that is it done correctly. *Id.*, p. 181.

ORDER ON CROSS-MOTIONS FOR
SUMMARY JUDGMENT - 7

The Court finds that since the trainees do their limited amount of work on the training flights under close observations, and do not displace any regular flight attendants, defendant has met its burden of proof as to this factor.

4) <u>No Immediate Benefit to Alaska</u>

Under this factor, plaintiff contends that "Alaska derives more benefit from the training program than do the new hires." This is not the correct test. The law presumes that Alaska will derive "some" benefit from offering training to prospective employees, and the relevant question is whether that benefit is "immediate." As the Fifth Circuit Court of Appeals stated in *American Airlines*,

> Although training benefits American by providing it with suitable personnel, the trainees attend school for their own benefit, to qualify for employment they could not otherwise obtain. The district court's finding that trainees gain the greater benefit from their experience is fully supported by the evidence. Finally, the district court found that American did not receive immediate benefit from the trainees' activities at the Learning Center. It observed that trainees are not productive for American until after their training ends.

*American Airlines*, 686 F. 2d at 272.

The same reasoning applies here. Alaska Airlines received no immediate benefit from the trainees' work serving passengers on board the training flights, because the airline still had to staff the airplane with a full complement of regular flight attendants. Further, in order to provide a seat for the trainees, the airline had to give up potential passenger revenue from the seats they occupied during the flights.

This situation is easily distinguished from the *McLaughlin* case cited by plaintiff, in which the "trainees" in a vending machine and snack delivery operation were required to work alongside regular employees and perform all job duties, without any learning opportunity. *McLaughlin v. Ensley*, 877 F. 2d 1207, 1208 (4th Cir. 1989). The *McLaughlin* employer was using the trainees to get work done that they otherwise would have to pay an employee to do. Here, by contrast, Alaska still has to pay a full complement of flight attendants on board, even if the trainees are performing some of the service cart work and trash pick-up. While the regular flight attendants themselves may derive some minor benefit from getting a short break from their regular serving duties at this time, this is not a benefit to Alaska.

Plaintiff also argues that there is great benefit to Alaska in the creation of a pool of potential flight attendants for hire. But for this pool of qualified applicants, she asserts, Alaska would have no flight

attendants and would not be able to operate as a business. This "qualified labor pool" argument was rejected by both the *Portland Terminal* and *American Airlines* courts. As the latter court stated,

> The Portland Terminal court did not rest its conclusion on whether training persons to do its work was economically beneficial to the railroad. In fact it is clear that the railroad, like American in the present case, considered the training program helpful to it, not merely a service to those who wanted to learn to be brakemen. Had this not been so, the railroad would not have used paid employees to teach instead of to do other work. American likewise would be ill-advised to train flight attendants . . . to work for other airlines. It patently did not operate its Learning Center as an eleemosynary act.

*American Airlines*, 686 F. 2d at 272. As noted above, the court further observed that the trainees are "not productive for American until after their training ends," so there was no **immediate** benefit to American.

The same situation exists here. Alaska receives no immediate benefit from the trainees' work. This factor has been met.

### 5) The Trainees are Not Necessarily Entitled to a Job

Plaintiff contends that "newly hired" flight attendants in the training program are employees from the date they are selected for training, and automatically continue as flight attendants once training is completed. As support for this contention, she quotes from the letter she received from Alaska prior to the training program, which begins, "Congratulations and welcome! We are very excited to offer you a position as a Flight Attendant at Alaska!" However, plaintiff's citation to the "welcome" letter omits the qualifying language immediately following which states,

> As a reminder, this offer is contingent upon the successful completion of the following: Post Offer Medical History Review; Drug and Nicotine screens, Background check, Fingerprinting and 5 weeks of unpaid training. This offer is also contingent on the company's continued operational need for flight attendants once you have completed your training.

Declaration of Hank Willson, Dkt. # 63-2, p. 78.

Plaintiff's own deposition testimony confirms that she understood that this letter was only a conditional offer of later employment, and that she would be an employee of Alaska only *after* completion of the training program. She acknowledged that she understood this when she signed her training contract, which states, in part that "I recognize that participation in this training program does not assure me of an offer of employment from Alaska Airlines. . ." Ulrich Deposition, Dkt. # 76-2, p.

ORDER ON CROSS-MOTIONS FOR
SUMMARY JUDGMENT - 9

114 and Exhibit 6. Thus, while most trainees who successfully complete the program are offered a job with Alaska, plaintiff's assertion that they are "entitled" to one is without merit.

(6) <u>The Employer and Trainees Both Understand the Training is Unpaid</u>

Plaintiff cannot dispute that she signed a training contract which specified that no wages would be paid during training. That fact satisfies the requirement that both employer and trainee understand that the training is unpaid. Plaintiff nevertheless argues that an employment relationship can be imputed even where there is an agreement disclaiming such relationship. She cites the Fifth Circuit case for the proposition that "an employee cannot waive FLSA rights so this agreement is material only insofar as it shows the expectations of trainees." *American Airlines*, 686 F. 2d at 269, n. 3. However, since she was not an employee during training she had no FLSA rights to waive. The agreement which she signed is material to demonstrate the expectations of the parties, which is dispositive on this factor.

III. <u>California State Law Claims</u>

Alaska has moved for summary judgment as to plaintiff's claims under California state law, contending that California law is not applicable to plaintiff's training hours. Plaintiff contends that California law does apply, as she signed her training contract in California, and she was assigned to a base there to work as a flight attendant after completion of her training. However, plaintiff has not demonstrated that the actual "work" for which plaintiff seeks compensation, namely the limited duties performed during the training flights, took place in California. The training center was in Washington State, where plaintiff lived during the training. All classes were held at the training center near Seattle. Presumably the training flights originated at Alaska's airport terminal at Sea-Tac Airport, although the parties do not state so directly.[1] Plaintiff has conspicuously not alleged that she was transported to California to board her training flights there. The "work" itself, the service of customers from the service cart, took place during the flight.

California labor laws apply only to work performed in the State of California. *Sullivan v. Oracle*,

---

[1] Defendant describes a "typical" training flight as flying from Seattle to Los Angeles. Defendant's Motion for Summary Judgment, Dkt. # 57, p. 8. Plaintiff asserts that the flights flew "over California and other states." Plaintiff's Motion for Summary Judgment, Dkt. # 66, p. 22.

ORDER ON CROSS-MOTIONS FOR
SUMMARY JUDGMENT - 10

547 f. 3d 1177, 1183 (9th Cir. 2008) "Like the criminal laws . . ., California employment laws implicitly extend to employment occurring within California's *state law* boundaries[.]'" *Id.*, quoting *Tidewater Marine Western, Inc., v. Bradshaw*, 14 Ca. 4th 557, 59 Cal. Rptr.2d 186, 927 P.2d 296, 301 (1996) (emphasis in original). Plaintiff has not shown that the work performed on board the training flights took place within California, and thus she has demonstrated no factual basis for her claims under the California labor laws. Defendant's motion for summary judgment as to these claims shall be granted.

## CONCLUSION

Alaska's training program meets all six requirements of the six-factor Department of Labor test. The Court therefore follows the *American Airlines* and *TWA* cases from the Fifth and Eighth Circuit Courts of Appeals in ruling that the flight attendant training program conducted by Alaska Airlines does not constitute compensable "work" under the FLSA.[2] Nor does it constitute work within California for which compensation is due under California labor law.

Defendant's motion for summary judgment is accordingly GRANTED as to Plaintiff's FLSA claim and her claims under the California labor laws. Plaintiff's cross-motion for summary judgment is DENIED. As this ruling disposes of all claims before the Court, the Clerk shall close the file and enter judgment of dismissal in favor of defendant.

Dated this _9_ day of February, 2009.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

---

[2] At oral argument, plaintiff conceded that if her case cannot be distinguished from *American Airlines* and *TWA* by the fact that the trainees here performed work on training flights rather than using simulated equipment, then the Fifth and Eighth Circuit cases control. She then invited the Court to find that those two cases were wrongly decided. The Court declines to do so.

ORDER ON CROSS-MOTIONS FOR
SUMMARY JUDGMENT - 11